

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INFORMATICA CORPORATION, et al.,

       Plaintiffs,

    v.

BUSINESS OBJECTS DATA
INTEGRATION, INC. Formerly ACTA
TECHNOLOGY, INC,

       Defendants.

_____/

No. C 02-3378 JSW  (JL)
**E-FILING**

**DISCOVERY ORDER**

**Granting Docket # 148**

**Introduction**

    All discovery in this case has been referred by the district court (Hon. Jeffrey S. White) pursuant to 28 U.S.C. §636(b) and Civil Local Rule 72. Defendant Business Objects Data Integration, Inc. ("BODI") moves to compel Plaintiff Informatica Corporation ("Informatica") to provide a narrative answer or a chart in response to Interrogatory 8. Informatica responded to the interrogatory, but availed itself of the business records option under Rule 33(d) Federal Rules of Civil Procedure, to produce documents, in this instance source code. BODI objects to the expense of finding the answers in the source code. BODI's Preliminary Invalidity Contentions ("PIC's") are due January 31, 2006. The last day to serve fact discovery is February 27.

**Background**

**United States District Court**

For the Northern District of California

1   This is a lawsuit for patent infringement. Informatica is a Delaware corporation with

2   its principal place of business in Redwood City, California. Informatica is a leading provider

3   of business analytics software that enables enterprises to automate integration, analysis

4   and delivery of key data. BODI, formerly Acta Technology,  is a Delaware corporation with

5   its principal place of business in Mountain View, California. BODI provides a data

6   integration software which competes with Informatica's.

7   Informatica has been issued several patents, including No. 6,014,670, entitled

8   "Apparatus and Method for Performing Data Transformations in Data Warehousing"; No.

9   6,339,775 B1 entitled "Apparatus and Method for Performing Data Transformations in Data

10  Warehousing"; No. 6,208,990 B1 entitled "Method and Architecture for Automated

11  Optimization of ETL Throughput in Data Warehousing Applications"; and No. 6,044,374,

12  entitled "Method and Apparatus for Sharing Metadata Between Multiple Data Marts

13  Through Object References" (the "Informatica Patents"). The Informatica Patents cover

14  various aspects of Informatica's data integration products, including technology which

15  enables its customers to efficiently transform data, efficiently update data within various

16  data warehouses and data marts, and share data among enterprise constituencies. (First

17  Amended Complaint)

18  Informatica contends that BODI's products infringe its patents. After contacting

19  BODI and suggesting a licensing agreement with no success, it filed suit in this district.

20  The claim construction hearing under *Markman v. Westview Instruments, Inc.*, 517

21  U.S. 370 (1996) has been held and the court has issued its Claim Construction order. The

22  parties stipulated to a revised pretrial schedule which requires BODI to comply with Patent

23  Local Rule 3-6(a) by producing its Preliminary Invalidity Contentions ("PIC's") by January

24  31, 2006. It propounded interrogatory 8 in part to obtain discovery necessary to the

25  preparation of the PIC's.

**Analysis**

27  BODI's Interrogatory 8 asks Informatica to provide the following:

28

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For each of the PATENTS-IN-SUIT, separately identify for each asserted claim in each Informatica product that Informatica contends embodies the PATENTS-IN-SUIT, including at least a chart that (1) specifies for each element all facts that support the existence of such elements in each product, (2) identifies each element in runtime code, source code, metadata, user interfaces including any graphical user interfaces, and any other relevant computer-related constructs that are part of each product, and (3) explain how each element is embodied by each product.

Informatica responded by identifying the product and versions thereof which embody the inventions on a claim-by-claim (or patent) basis and provided, pursuant to FRCP 33(d), the source code and executable code (including all user interfaces) by Bates range to the version. Informatica contends that the source code for its products, and the products themselves, provide "a detailed description of the function of those products at the most granular level." Informatica asserts this response is "more than adequate to determine whether an Informatica product embodies a patent-in-suit." Furthermore, since the court has construed the claims of the patents-in-suit, such an analysis is no longer relevant to infringement, but only to identify which of Informatica's products embody the patents-in-suit for damages purposes.

Informatica claims that analyzing the source code is more burdensome for it than for BODI: (1) there is no automatic assumption that the interrogating party has a greater burden simply because the responding party is more familiar with its own products; (2) many of Informatica's inventors and engineers familiar with the implementation of those inventions have long since left Informatica and (3) the analysis sought by Interrogatory 8 only requires application of the court's construction of the patent claims to Informatica's products, which is unfamiliar to Informatica's engineers, and more appropriately performed by either side's experts. In short, the burden of performing the analysis requested in Interrogatory Number 8 is roughly the same for Informatica as it is for BODI.

Informatica also claims that its burden to respond outweighs the relevance of the information sought. To obtain damages, Informatica need not show that a product practices each and every claim but only that one infringed claim of a patent-in-suit is present in a product. Informatica disputes BODIs' contention that the requested information

is relevant to such disputed issues as when the claimed inventions were conceived, reduced to practice, sold, and offered for sale, which potentially impacts the validity of the patents and inequitable conduct by Informatica. BODI, according to Informatica, propounded several other detailed interrogatories about when the claimed inventions were conceived and reduced to practice, to which Informatica has responded. To the extent that Interrogatory 8 relates to that topic, Informatica objects to it as cumulative. Nor could it be relevant to inequitable conduct or invalidity, since the only products Informatica contends embody the patents-in-suit were released too late to be relevant to the issues BODI argues. Informatica believes that it has adequately responded to Interrogatory Number 8 and that the relevance of any further response is far outweighed by the burden and oppression required to comply with BODI's request.

BODI contends that the burden on it to review the source code produced by Informatica in response to BODI's Interrogatory Number 8, and extract the relevant information, is not "substantially the same" as it is for Informatica. BODI contends that it would be significantly more expensive and time consuming for BODI to derive this information than for Informatica to produce it in a narrative answer or chart.

BODI argues as follows:

First, if Informatica intends to attempt to prove at trial that certain of its products embody the claims of the patents-in-suit, this interrogatory simply asks Informatica to explain its position. BODI denies that it must guess what Informatica's position may be. This interrogatory merely requests that Informatica search within a limited universe (its patents and its products) to extract the information upon which it bases its allegations in this lawsuit.

Second, Informatica is in a far better position to understand its own source code and product features in relation to their own claims. Informatica is the patent owner and employed the developers of the products that embody the claims. Informatica's employees can best articulate which parts of its own patents are embodied in its own products.

**United States District Court**

For the Northern District of California

Third, were BODI required to undertake this analysis, it would have to pay tens of thousands of dollars, and potentially hundreds of thousands of dollars, to hire a team of software experts to analyze Informatica's source code. It would take a  team of experts weeks to research Informatica's source code, Informatica's patents, and how such code and product features map to Informatica's patent claims, since they do not have the background and experience with the code and products that Informatica's employees have.

BODI asserts that "[i]n determining the relative burdens to the parties, the court must balance the costs of research, the nature of the business records, and the familiarity of the interrogated party with its own documents." *Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25158 *10 (C.D. Cal. Oct. 12, 2005). "Rule 33(d) was not designed to save a party the effort of extracting information from a limited universe of documents." *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.,* 224 F.R.D. 644, 652 (N.D. Cal. 2004).

Informatica relies on these same two cases in support of its position.

### Analysis

The Federal Rules of Civil Procedure provide an alternative to a narrative answer to an interrogatory: the responding party may designate where in its business records the answer or answers may be found:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained. . . A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

FRCP 33(d)

Under the discovery rules, the presumption is that the responding party must  bear the expense of complying with discovery requests. *Oppenheimer Fund, Inc. V. Sanders*, 437 U.S. 340, 358 (1978); nevertheless, a court may protect the responding party from undue burden or expense by shifting some or all of the costs of production to the

United States District Court

For the Northern District of California

1    requesting party. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A., *Rowe Entertainment, Inc. v.*

2    *William Morris Agency, Inc.,* 205 F.R.D. 421 (S.D.N. Y.,2002)

3        In determining whether to shift the costs of discovery of electronic data to the

4    requesting party, factors to consider include: (1) the specificity of the discovery requests;

5    (2) the likelihood of discovering critical information ; (3) the availability of such information

6    from other sources; (4) the purposes for which the responding party maintains the

7    requested data (5) the relative benefit to the parties of obtaining the information; (6) the

8    total cost associated with production; (7) the relative ability of each party to control costs

9    and its incentive to do so; and (8) the resources available to each party. Id.

10       A more recent case has refined these factors into a new even-factor test:

11   1. The extent to which the request is specifically tailored to discover relevant

12   information;

13   2. The availability of such information from other sources;

14   3. The total cost of production, compared to the amount in controversy;

15   4. The total cost of production, compared to the resources available to each party;

16   5. The relative ability of each party to control costs and its incentive to do so;

17   6. The importance of the issues at stake in the litigation; and

18   7. The relative benefits to the parties of obtaining the information.

19       The court emphasized that the seven factors should not be weighed equally.

20   *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 322 (S.D.N.Y.,2003)

21

22       Judge Scheindlin held that, when evaluating cost-shifting, the central question must

23   be, does the request impose an "undue burden or expense" on the responding party? Put

24   another way, "how important is the sought-after evidence  in comparison to the cost of

25   production?" The seven-factors provide some guidance in answering this question, but the

26   test cannot be mechanically applied at the risk of losing sight of its purpose. *Id.* at 322-323

27       The judge posited that weighting the factors in descending order of importance may

28

**United States District Court**
For the Northern District of California

1    solve the problem and avoid a mechanistic application of the test.

2         The first two factors which comprise a "marginal utility test"--are the most important:

3    (1) the extent to which the request is specifically tailored to discover relevant

4    information and,

5    (2) the availability of such information from other sources. *Id.*

6         This Court finds that BODI's Interrogatory 8 is specifically tailored to discover

7    relevant information about the patents-in-suit and Informatica's contentions regarding their

8    embodiment in Informatica's products. The information is most readily available to

9    Informatica and in truth, only Informatica can state its own position regarding how its

10   products embody its patents.  Informatica, even if the original engineers have left the

11   company, is still the patent owner and still creates and supports its products. Of necessity,

12   it must be familiar with their inner workings. It strains credulity to expect  that BODI would

13   be equally familiar with Informatica's products, especially when BODI contends it will need

14   to spend tens or even hundreds of thousands of dollars to analyze Informatica's source

15   code in order to obtain the information it needs for its PIC's, due in a matter of weeks.

16        The Court rejects Informatica's assertion that it is just as easy (or hard) for

17   Informatica as for BODI to "identify for each asserted claim in each Informatica product that

18   Informatica contends embodies the PATENTS-IN-SUIT." It could only guess.

19

20        Informatica contends that Interrogatory 8 is irrelevant to claims for inequitable

21   conduct or invalidity. It is impossible to know this, before the requested analysis. Fact

22   discovery is still open; this is not the time for unduly narrowing the issues or precluding

23   potentially admissible evidence.

24        For the above reasons, Informatica may not avail itself of the option under FRCP

25   Rule 33(d) to produce documents in response to BODI's interrogatory 8, but shall provide a

26   narrative answer, or at least a chart containing the answers to the interrogatory within two

27   weeks of the e-filing of this order.

28        IT IS SO ORDERED.

DATED: January        2006

_____
JAMES LARSON
Chief United States Magistrate Judge

**United States District Court**

For the Northern District of California