1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INFORMATICA CORPORATION, a Delaware corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>BUSINESS OBJECTS DATA INTEGRATION, INC., formerly known as ACTA TECHNOLOGY, INC., a Delaware corporation,<br><br>              Defendant | Case No.  C 02-03378 EDL<br><br>**TENTATIVE JURY INSTRUCTIONS**<br><br>Trial Date:          March 12, 2007<br><br>Pretrial Conference:   March 6, 2007 |
| AND RELATED COUNTERCLAIMS. | |

### 1.      Preliminary Instruction - Duty of Jury

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

1

  **2.**  **Preliminary Instruction - Claims and Defenses**

2

  To help you follow the evidence, I will give you a brief summary of the positions of the

3

parties:

4

  The plaintiff in this case is Informatica Corporation and the defendant is Business

5

Objects Data Integration, Inc., which we will refer to as BODI.  Both are software companies

6

who sell competing software.  This software is known as extraction, transformation, and load, or

7

"ETL" software.   The case involves two United States patents owned by Informatica.

8

Informatica contends that BODI willfully infringes, and induces its customers to infringe, certain

9

claims in the two patents.  Informatica seeks money damages for the alleged infringement.

10

BODI denies that it infringes or induces its customers to infringe the patents.   BODI also alleges

11

that Informatica's patents are not valid because Informatica's alleged inventions were already

12

available to the public before Informatica filed for its patents.  Informatica denies that its patents

13

are invalid.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**3.**     **Preliminary Instruction - What Is Evidence**

2

The evidence you are to consider in deciding what the facts are consists of:

3

(1) the sworn testimony of any witness;

4

(2) the exhibits which are received into evidence; and

5

(3) any facts to which the lawyers stipulate.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.** **Preliminary Instruction - What Is Not Evidence**

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1) statements and arguments of the attorneys;

(2) questions and objections of the attorneys;

(3) testimony that I instruct you to disregard; and

(4) anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**5.** **Preliminary Instruction - Evidence for Limited Purpose**

Some evidence may be admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**6.**      **<u>Preliminary Instruction - Direct and Circumstantial Evidence</u>**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Case No. C 02-03378 EDL

1

**7.       Preliminary Instruction - Ruling on Objections**

2       There are rules of evidence that control what can be received into evidence.  When a

3   lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks

4   that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the

5   objection, the question may be answered or the exhibit received.  If I sustain the objection, the

6   question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an

7   objection to a question, you must ignore the question and must not guess what the answer might

8   have been.

9       Sometimes I may order that evidence be stricken from the record and that you disregard

10   or ignore the evidence. That means that when you are deciding the case, you must not consider

11   the evidence that I told you to disregard.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**8.**   **Preliminary Instruction - Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

### 9.     <u>Preliminary Instruction - Conduct of the Jury</u>

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case please let me know about it immediately. You may discuss evidence during trial only with your fellow jurors and only when all jurors are present in the jury room. Even though you may discuss the case under the conditions I have described, do not form final opinions about any fact or about the outcome of the case until you have heard and considered all of the evidence, the closing arguments, and the rest of the instructions I will give you on the law. Both sides have the right to have the case fully presented and argued before you decide any of the issues in the case. Keep an open mind during the trial. Form your final opinions only after you have had an opportunity to discuss the case with each other in the jury room at the end of the trial.

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the courtroom deputy to give to me; and

Fifth, do not make up your mind about what the verdict should be until all the evidence is in, until you have heard my complete and final instructions on the law and the final arguments of counsel.   Keep an open mind until you start your deliberations at the end of the case.

Case No. C 02-03378 EDL

**10.** **Preliminary Instruction - No Transcript Available to Jury**

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

**11.** **Preliminary Instruction - Taking Notes**

If you wish, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you leave, your notes should be left in the envelope in the jury room.

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

1

**12.**    **Preliminary Instruction - Outline of Trial**

2      The next phase of the trial will now begin. First, each side may make an opening

3  statement. An opening statement is not evidence. It is simply an outline to help you understand

4  what that party expects the evidence will show. A party is not required to make an opening

5  statement.

6      The plaintiff will then present evidence, and counsel for the defendant may

7  cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may

8  cross-examine.

9      After the evidence has been presented, the attorneys will make closing arguments and I

10  will instruct you on the law that applies to the case.

11      After that, you will go to the jury room to deliberate on your verdict.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

13.     **Preliminary Instruction - Interpretation of Claims**

2         This case involves a dispute relating to two United States patents.  Before summarizing

3    the positions of the parties and the legal issues involved in the dispute, I will show you a video to

4    explain what a patent is and how one is obtained.  The video will also briefly explain the issues

5    that arise in cases involving disputes relating to a United States patent.

6         [Show Federal Judicial Center video, "Introduction to the Patent System."]

7         [The Court should show the jury the patent at issue and point out the parts including the

8    specification, drawings and claims including the claims at issue.  The Court could at this point

9    also hand out its construction of any claim terms and the glossary.]

10        Some of the language in the patent claims involved in this case have already been

11   interpreted.  A copy of these interpretations is included in your notebooks.  You must accept

12   those interpretations as correct.

| Claim Term | Court's Construction |
|---|---|
| port | an abstraction for describing the inputs and/or outputs of sources, targets, or transformation objects |
| transformation object | a reusable component for processing data according to predefined instructions |
| a data warehouse application | software that extracts, transforms and loads data into one or more databases, where the data is useful for decision support, usually across an enterprise |
| a data mart application | software that extracts, transforms and loads data into one or more databases, where the database(s) contain a subset of corporate data useful for decision support for an aspect of a business |
| mapping | verb sense: creating a correspondence between the elements of one set and the elements of another set<br><br>noun sense: an end to end data flow that includes one or more sources, transformations and targets |
| metadata | data about data |

1    **14.    Preliminary Instruction - Summary of Contentions**

2        To help you follow the evidence, I will now give you a summary of the positions of the

3    parties.

4        The parties in this case are the plaintiff, Informatica Corporation, which I will refer to as

5    "Informatica" and defendant Business Objects Data Integration, Inc., which I will collectively

6    refer to simply as "BODI."  The case involves two United States patents obtained and owned by

7    Informatica.  The first patent involved in this case is United States Patent Number 6,014,670

8    which lists Kiumarse Zamanian and Diaz Nesamoney as the inventors.  For convenience, the

9    parties and I will often refer to this patent as the '670 patent, 6-7-0 being the last three numbers

10   of its patent number.  The second patent involved in this case is United States Patent Number

11   6,339,775 which again lists Mr.  Zamanian and Mr.  Nesamoney as the inventors.  The parties

12   and I will often refer to this patent as the '775 patent.  The parties and I will often refer to these

13   patents collectively as "the patents" or the "patents-in-issue."

14       Informatica filed suit in this court seeking money damages from BODI for allegedly

15   infringing the '670 and '775 patents by making, exporting, using, selling, and offering for sale

16   products that Informatica argues are covered by claims 1, 8, 12, 15, 18, and 31 of the '670 patent

17   and claims 5, 7, and 11 of the '775 patent. Informatica also argues that BODI has knowingly

18   induced infringement of these claims of the patents by others.  The products that are alleged to

19   infringe are all versions of Data Integrator.  Data Integrator used to be called ActaWorks and

20   versions of ActaWorks starting at version 5.0 are also alleged to infringe.  ActaWorks was a

21   product of Acta Technology.  Shortly before this lawsuit was filed, Business Objects Americas

22   announced its merger with Acta Technology.  The corporation resulting from the merger was

23   named Business Objects Data Integration, Inc., or "BODI."  Thereafter, the product was renamed

24   Data Integrator and you may hear witnesses or documents refer to both ActaWorks and Data

25   Integrator.

26       BODI denies that it has infringed claims of the patents-in-issue and argues that, in

27   addition, the claims are invalid.

28       Your job will be to decide whether any of claims 1, 8, 12, 15, 18, and 31 of the '670

patent and claims 5, 7, and 11 of the '775 patent have been infringed and whether any of those claims are invalid.  If you decide that any claim of the patents-in-issue has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Informatica to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

1

### 15.   <u>Preliminary Instruction - Outline of Trial</u>

2   The trial will now begin.  First, each side may make an opening statement.  An opening

3   statement is not evidence.  It is simply an outline to help you understand what that party expects

4   the evidence will show.

5   There are two standards of proof that you will apply to the evidence, depending on the

6   issue you are deciding.  On some issues, you must decide whether something is more likely true

7   than not.  On other issues, you must use a higher standard and decide whether it is highly probable

8   that something is true.

9   After opening statements, Informatica will present its evidence on its contention that BODI

10   has infringed and has knowingly induced its customers to infringe claims 1, 8, 12, 15, 18, and 31

11   of the '670 patent and claims 5, 7, and 11 of the '775 patent, and that the infringement has been

12   and continues to be willful.  To prove infringement of any claim, Informatica must persuade you

13   that it is more likely than not that BODI has infringed that claim.  To persuade you that any

14   infringement was willful, Informatica must prove that it is highly probable that the infringement

15   was willful.

16   BODI will go next and present its evidence that the claims of the '670 and '775 patents are

17   invalid.  To prove invalidity of any claim, BODI must persuade you that it is highly probable that

18   the claim is invalid.  In addition to presenting its evidence of invalidity, BODI will put on

19   evidence responding to Informatica's infringement and willfulness contentions.

20   Informatica will then return and will put on evidence responding to BODI contention that

21   the claims of the '670 and '775 patents are invalid.  Informatica will also have the option to put on

22   what is referred to as "rebuttal" evidence to any evidence offered by BODI of non-infringement or

23   lack of willfulness.

24   Finally, BODI will have the option to put on "rebuttal" evidence to any evidence offered

25   by Informatica on the validity of the claims of the '670 and '775 patents.

26   During the presentation of the evidence, the attorneys will be allowed brief opportunities

27   to explain what they believe the evidence has shown or what they believe upcoming evidence will

28   show.  Such comments are not evidence and are being allowed solely for the purpose of helping

1  you understand the evidence.

2      After the evidence has been presented, I will give you final instructions on the law that

3  applies to the case and the attorneys will make closing arguments.  Closing arguments are not

4  evidence.  After the instructions and closing arguments, you will then decide the case.  You should

5  base your decision on all of the evidence, regardless of which party presented it.

Case No. C 02-03378 EDL

**15A.**        <u>**Preliminary Instruction - Questions to Witnesses by Jurors**</u>

If you have a question about the case for a witness or for me, write it down, but do not sign it.  Hand the question to the courtroom deputy.  If your question is for a witness who is about to leave the witness stand, please signal the courtroom deputy or me before the witness leaves the stand.

The lawyers and I will discuss the question among ourselves.  The rules of evidence or other rules of law may prevent some questions from being asked.  If the rules permit the question and the answer is available, an answer will be given at the earliest opportunity.  When we do not ask a question, it is no reflection on the person submitting it.  You should attach no significance to the failure to ask a question.  I will apply the same legal standards to your questions as I do to the questions asked by the lawyers.

If a particular question is not asked, please do not guess why or what the answer might have been.

Also, please keep in mind that it takes time for the Court to discuss any question with the lawyers, so too many questions could delay the trial.

**16.**     <u>**Instruction During Trial - First Recess**</u>

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately. Do not read or listen to any news reports of the trial. Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the courtroom deputy to give to me.

I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on such occasions.

**17.** **Instruction During Trial - Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case No. C 02-03378 EDL

**18.**     <u>**Instruction During Trial - Stipulated Testimony**</u>

The parties have agreed what [*witness*]'s testimony would be if called as a witness.  You should consider that testimony in the same way as if it had been given here in court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 19.   <u>Instruction During Trial - Stipulations of Fact</u>

The parties have agreed to certain facts that have been stated to you.  You should therefore treat these facts as having been proved.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**20.** <u>**Instruction During Trial - Judicial Notice**</u>

The court has decided to accept as proved the fact that [e.g., the city of San Francisco is north of the city of Los Angeles], even though no evidence has been introduced on the subject. You must accept this fact as true.

1

21.     **Instruction During Trial - Deposition as Substantive Evidence**

2       When a person is unavailable to testify at trial, the deposition of that person may be used at

3   the trial.  A deposition is the sworn testimony of a witness taken before trial.  The witness is

4   placed under oath to tell the truth and lawyers for each party may ask questions.  The questions

5   and answers are recorded.

6       The deposition of [*witness*], which was taken on [*date*], is about to be presented to you.

7   Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible,

8   in the same way as if the witness had been present to testify.

9       Do not place any significance on the behavior or tone of voice of any person reading the

10  questions or answers.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**22.**     **<u>Instruction During Trial - Limited Purpose Evidence</u>**

The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and for no other purpose.

**23.**     **Instruction During Trial - Use of Interrogatories of a Party**

Evidence is now to be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions which were submitted in writing under established court procedures.  The answers are entitled to the same consideration and are to be judged as to credibility and weight, and otherwise considered by you insofar as possible, as if the answers were made from the witness stand.

**23.A**   **Instruction During Trial - Limiting Instruction Regarding Sachin Chawla's Work**
**for Informatica**

The parties agree that the inventions of the '670 and '775 patents were made after the time that Sachine Chawla worked for Informatica.  You have heard testimony that Mr. Chawla worked as a consultant for Informatica [sometime] between January 1, 1996 and early March 1996.  The business relationship between Mr. Chawla and Informatica ended before Informatica conceived or developed the claimed inventions of the '670 and '775 patents.  There is no allegation in this case that Mr. Chawla learned of the inventions of the '670 and '775 patents during the time he worked for Informatica, or misappropriated any of Informatica's proprietary information that he may have learned as a consultant.

24.   **Instruction Before Deliberation - Duties of Jury to Find Facts and Follow Law**

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

**25.**     **Instruction Before Deliberation - What is Evidence**

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed or stipulated.

**26.**   <u>**Instruction Before Deliberation - What Is Not Evidence**</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4)   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Case No. C 02-03378 EDL

1   **27.   <u>Instruction Before Deliberation - Direct and Circumstantial Evidence</u>**

2          Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such

3   as testimony by a witness about what the witness personally saw or heard or did. Circumstantial

4   evidence is proof of one or more facts from which you could find another fact. You should

5   consider both kinds of evidence. The law makes no distinction between the weight to be given to

6   either direct or circumstantial evidence. It is for you to decide how much weight to give to any

7   evidence.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**28.**      **Instruction Before Deliberation - Credibility of Witnesses**

2      In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe. You may believe everything a witness says, or part of it, or none

4 of it.

5      In considering the testimony of any witness, you may take into account:

6      (1) the opportunity and ability of the witness to see or hear or know the things testified

7 to;

8      (2) the witness' memory;

9      (3) the witness' manner while testifying;

10      (4) the witness' interest in the outcome of the case and any bias or prejudice;

11      (5) whether other evidence contradicted the witness' testimony;

12      (6) the reasonableness of the witness' testimony in light of all the evidence; and

13      (7) any other factors that bear on believability.

14      The weight of the evidence as to a fact does not necessarily depend on the number of

15 witnesses who testify.

16

17

18

19

20

21

22

23

24

25

26

27

28

**29.      Instruction Before Deliberation - Opinion Evidence, Expert Witnesses**

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

Case No. C 02-03378 EDL

**30.**      **Instruction Before Deliberation - Charts and Summaries Not Received Into Evidence**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

1    **31.**     <u>**Instruction Before Deliberation - Charts and Summaries Received Into Evidence**</u>

2           Other charts and summaries have been received into evidence to illustrate information

3    brought out in the trial.  Charts and summaries are only as good as the underlying evidence that

4    supports them.  You should, therefore, give them only such weight as you think the underlying

5    evidence deserves.

1

###   35.   Instruction Before Deliberation - Summary of Contentions

2  I will first give you a summary of each side's contentions in this case.  I will then tell you

3  what each side must prove to win on each of its contentions.  As I previously told you, Informatica

4  seeks money damages from BODI for allegedly infringing the '670 and '775 patents by making,

5  using, selling and offering for sale products that Informatica argues are covered by claims 1, 8, 12,

6  15, 18, and 31 of the '670 patent, and claims 5, 7, and 11 of the '775 patent.  [Informatica also

7  argues that BODI has knowingly induced infringement of these claims of the patents-in-suit by

8  others.  The products that are alleged to infringe are all versions of ActaWorks starting at version

9  5.0 and all versions of Data Integrator.]  [Informatica also contends that BODI knowingly induces

10  its customers to infringe these claims through certain uses of a feature called embedded data flows

11  ("EDFs") in BODI's Data Integrator products.]

12  BODI denies that it has infringed the asserted claims of the patents and argues that, in

13  addition, all claims of the patents-in-issue are invalid.

14  Your job will be to decide whether the asserted claims of the patents-in-issue have been

15  infringed and whether any of those claims are invalid.  If you decide that any claim of the patents

16  has been infringed and is not invalid, you will then need to decide any money damages to be

17  awarded to Informatica to compensate it for the infringement.  You will also need to make a

18  finding as to whether the infringement was willful.  If you decide that any infringement was

19  willful, that decision should not affect any damage award you make.  I will take willfulness into

20  account later.

21

22

23

24

25

26

27

28

**36.** <u>**Instruction Before Deliberation - Interpretation of Claims**</u>

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.  Claims are to be interpreted the same way for both infringement and invalidity.  Therefore, whatever interpretation of the claims you use in deciding infringement, you must use in deciding invalidity, and vice versa.

I have interpreted the following terms, phrases or clauses:

| Claim Term | Court's Construction |
|---|---|
| port | an abstraction for describing the inputs and/or outputs of sources, targets, or transformation objects |
| transformation object | a reusable component for processing data according to predefined instructions |
| a data warehouse application | software that extracts, transforms and loads data into one or more databases, where the data is useful for decision support, usually across an enterprise |
| a data mart application | software that extracts, transforms and loads data into one or more databases, where the database(s) contain a subset of corporate data useful for decision support for an aspect of a business |
| mapping | verb sense: creating a correspondence between the elements of one set and the elements of another set<br><br>noun sense: an end to end data flow that includes one or more sources, transformations and targets |
| metadata | data about data |

**38.** **Instruction Before Deliberation - Infringement—Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether Informatica has proven that BODI has infringed one or more of the asserted claims of the '670 or '775 patents.  To prove infringement of any claim, Informatica must persuade you that it is more likely than not that BODI has infringed that claim.

Informatica asserts that BODI has infringed 9 claims from the two patents at issue. These claims are:

claims 1, 8, 12, 15, 18, and 31 of the '670 patent; and

claims 5, 7, and 11 of the '775 patent.

1

**39.     Instruction Before Deliberation - Direct Infringement**

2      A patent's claims define what is covered by the patent.  A product or method directly

3 infringes a patent if it is covered by at least one claim of the patent.

4      Deciding whether a claim has been directly infringed is a two-step process.  The first step

5 is to decide the meaning of the patent claim.  I have already made this decision, and I have already

6 instructed you as to the meaning of the asserted patent claims.  The second step is to decide

7 whether BODI has made, used, sold, or offered for sale within the United States a product or

8 method covered by a claim of the '670 and '775 patents.  You, the jury, make this decision.

9      With one exception, you must consider each of the asserted claims of the patent

10 individually, and decide whether BODI's products or methods infringe that claim.  The one

11 exception to considering claims individually concerns dependent claims.  A dependent claim

12 includes all of the requirements of a particular independent claim, plus additional requirements of

13 its own.  As a result, if you find that an independent claim is not infringed, you must find that its

14 dependent claims are also not infringed.  On the other hand, if you find that an independent claim

15 has been infringed, you must still separately decide whether the additional requirements of its

16 asserted dependent claims have also been infringed.

17      To decide whether a BODI's product or method infringes a claim of the '670 or '775

18 patents, you must compare the product or method with the patent claim and determine whether

19 every requirement of the claim is included in the product.  If so, BODI's product or method

20 infringes that claim.  If, however, BODI's products or methods do not have every requirement in

21 the patent claim, BODI's products or methods do not infringe that claim.  You must decide

22 infringement for each asserted claim separately.

23

24

25

26

27

28

42.     **Instruction Before Deliberation - Inducing Patent Infringement**

Informatica alleges that BODI has knowingly induced BODI's customers to infringe claims 1, 8, 12, 15, 18 and 31 of the '670 patent, and claims 5, 7, and 11 of the '775 patent.  In order to induce infringement, there must first be an act of direct infringement and proof that BODI knowingly induced infringement with the intent to encourage the infringement.  BODI must have intended to cause the acts that constitute the direct infringement and must have known or should have known that its action would cause the direct infringement.  Unlike direct infringement, which must take place within the United States, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here.

1    **42A.    <u>Instruction Before Deliberation - Willful Infringement</u>**

2          In this case, Informatica argues both that BODI infringed and that BODI infringed

3    willfully.  To prove willful infringement, Informatica must persuade you that it is "highly

4    probable" that BODI willfully infringed.

5          Specifically, Informatica must demonstrate that it is highly probable that:

6          A.      BODI had actual knowledge of the '670 and '775 patents; and

7          B.      BODI had no reasonable basis for believing (1) that BODI's products did not

8                  infringe the patents-in-issue or (2) that the patents-in-issue were invalid.

9          In deciding whether BODI committed willful infringement, you must consider all of the

10   facts, which include but are not limited to:

11         A.      Whether BODI intentionally copied a product of Informatica covered by the

12                 patents-in-issue;

13         B.      Whether BODI, when it learned of Informatica's patent protection, investigated

14                 the scope of the patent and formed a good-faith belief that the patent was invalid

15                 or that it was not infringed;

16         C.      Whether BODI had a substantial defense to infringement and reasonably believed

17                 that the defense would be successful if litigated;

18         D.      Whether BODI made a good faith effort to avoid infringing the patent; and

19         E.      Whether BODI relied on a legal opinion that appeared to it to be well-supported

20                 and believable and that advised BODI (1) that the products did not infringe the

21                 patents-in-issue or (2) that the patents-in-issue were invalid.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 43.    Instruction Before Deliberation - Invalidity—Burden of Proof

I will now instruct you on the rules you must follow in deciding whether BODI has proven that the claims of the '670 and '775 patents are invalid.  To prove invalidity of any of the patent claims, BODI must persuade you that it is highly probable that the claim is invalid.

I will now instruct you on the invalidity issues that you will have to decide in this case.

1

## 44.    <u>Instruction Before Deliberation - Anticipation</u>

2          A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid

3 because it is not new, all of its requirements must be in a single previous device or method, or

4 described in a single previous publication.  We call these things "prior art references."  The

5 description in a reference does not have to be in the same words as the claim, but all the

6 requirements must be there, either stated or necessarily implied, so that someone of ordinary skill

7 in the field of ETL software looking at that one reference would be able to make and use the

8 claimed invention.

9          Here is a list of the ways that BODI can show that a patent claim was not new:

10    •    if the claimed invention was already publicly known or publicly used by others in the

11         United States before the date of conception;

12    •    if the claimed invention was already patented or described in a printed publication

13         anywhere in the world before the date of conception.  A reference is a "printed

14         publication" if it is accessible to those interested in the field, even if it is difficult to

15         find;

16    •    if the claimed invention was already made by someone else in the United States

17         before the date of conception, if that other person had not abandoned the invention or

18         kept it secret;

19    •    if the claimed invention was already described in another issued U.S. patent or

20         published U.S. patent application that was based on a patent application filed before

21         the date of conception;

22    •    if MS Kiumarse Zamanian and Diaz Nesamoney did not invent the claimed invention

23         but instead learned of the claimed invention from someone else.

24          Since it is in dispute, you must determine a date of conception for the claimed invention.

25 Conception is the mental part of an inventive act and is proven when the invention is shown in

26 its complete form by drawings, disclosure to another or other forms of evidence presented at

27 trial.

28

45.     **Instruction Before Deliberation - Statutory Bars**

A patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid here, all of its requirements must have been present in one prior art reference more than a year before the patent application was filed.  Here is a list of ways BODI can show that the patent applications were not timely filed:

- if the claimed invention was already patented or described in a printed publication anywhere in the world one year before the patent application was filed.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- if the claimed invention was already being openly used in the United States one year before the patent application was filed and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

- if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, one year before the patent application was filed.  The claimed invention is not being sold or offered for sale if Informatica shows that the sale or offer for sale was primarily experimental.  The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field of ETL software to make and use the invention based on them.

For a claim to be not new because of a prior art reference dated at least one year earlier than the effective filing date of the patent application, all of the claimed requirements must have been specifically disclosed in the reference, or would have to have been known to a person of ordinary skill in the field to have been necessarily present in the reference.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill

in the field of ETL software looking at the reference to make and use the claimed invention.

One year before the '670 patent was filed is November 7, 1996.  One year before claim 11 of the '775 patent was filed is [November 7, 1996] [November 16, 1998].  One year before claims 5 and 7 of the '775 patent was filed is November 16, 1998.

1    **46.    Instruction Before Deliberation - Obviousness**

2         A patent claim is invalid if the claimed invention would have been obvious to a person of

3    ordinary skill in the field at the time the application was filed.  This means that even if all of the

4    requirements of the claim cannot be found in a single prior art reference that would anticipate the

5    claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of ETL

6    software who knew about all this prior art would have come up with the claimed invention.  The

7    claimed invention is not obvious unless there was something in the prior art or within the

8    understanding of a person of ordinary skill in the field or the nature of the problem itself that

9    would suggest the claimed invention.  You must be careful not to determine obviousness using the

10   benefit of hindsight.  You should put yourself in the position of a person of ordinary skill in the

11   field at the time the invention was made and you should not consider what is known today or what

12   is learned from the teaching of the patent.

13        Your conclusion about the question whether a claim is obvious must be based on several

14   factual decisions that you must make. First you must decide the scope and content of the prior art.

15   Second, you must decide what difference, if any, exists between the claim and the prior art.  Third,

16   you must decide the level of ordinary skill in the field that someone would have had at the time

17   the claimed invention was made.  Finally, you must consider any evidence that has been presented

18   with respect to the following:

19        (1)  commercial success due to the merits of the claimed invention;

20        (2)  a long felt need for the solution provided by the claimed invention;

21        (3)  unsuccessful attempts by others to find the solution provided by the claimed invention;

22        (4)  copying of the claimed invention by others;

23        (5)  unexpected superior results from the claimed invention;

24        (6)  acceptance by others of the claimed invention as shown by praise from others in the

25              field or from the licensing of the claimed invention;

26         (7) independent invention of the claimed invention by others before or at about the same

27              time as the named inventor thought of it.

28        The presence of any of the first six considerations may be an indication that a claimed

invention would not have been obvious at the time this invention was made, and the presence of the seventh consideration may be an indication that the claimed invention would have been obvious at such time.  Although you must consider any evidence of these factors, the importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**47.**      **Instruction Before Deliberation – Differences over the Prior Art**

In reaching your conclusion as to whether or not claims 1, 8, 12, 15, 18 and 31 of the '670 patent would have been obvious at the time the claimed invention was made, you should consider any difference or differences between Exhibit No. _____ [*VMARK Technical Note, Data Stage Architecture Overview*] and the claimed requirements.

1          **48.      <u>Instruction Before Deliberation – Level of Ordinary Skill</u>**

2          Several times in my instructions I have referred to a person of ordinary skill in the field of

3    ETL software.  It is up to you to decide the level of ordinary skill in the field of ETL software.

4          You should consider all the evidence introduced at trial in making this decision, including:

5          (1) the levels of education and experience of persons working in the field;

6          (2) the types of problems encountered in the field; and

7          (3) the sophistication of the technology.

8          Informatica contends that a person of ordinary skill in the field has an undergraduate

9    degree in computer science (or a related field or equivalent work experience), and three or more

10   years involved with the development of related applications, e.g, decision support or business

11   intelligence, or equivalent training.  BODI contends that the person of ordinary skill in the field

12   has at least a Bachelor's Degree in Computer Science (or the equivalent) and two years experience

13   working in the field of data warehousing and ETL software (or the equivalent).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**49.   Instruction Before Deliberation - Damages—Burden of Proof**

2       I will instruct you about the measure of damages.  By instructing you on damages, I am not

3  suggesting which party should win on any issue.  If you find that BODI infringed any valid claim

4  of the '670 or '775 patents, you must then determine the amount of money damages to be awarded

5  to Informatica to compensate it for the infringement.

6       The amount of those damages must be adequate to compensate Informatica for the

7  infringement.  A damages award should put the patent holder in approximately the financial

8  position it would have been in had the infringement not occurred, but in no event may the

9  damages award be less than a reasonable royalty.  You should keep in mind that the damages you

10 award are meant to compensate the patent holder and not to punish an infringer.

11      Informatica has the burden to persuade you of the amount of its damages.  You should

12 award only those damages that Informatica more likely than not suffered.  While Informatica is

13 not required to prove its damages with mathematical precision, it must prove them with reasonable

14 certainty.  Informatica is not entitled to damages that are remote or speculative.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 02-03378 EDL

1

          **50.**       **Instruction Before Deliberation - Lost Profits—Generally**

2

     In this case, Informatica seeks to recover lost profits for some of BODI's sales of

3

ActaWorks and Data Integrator, and a reasonable royalty on the rest of BODI's sales.

4

     To recover lost profits for infringing sales, Informatica must show that but for the

5

infringement there is a reasonable probability that it would have made sales that BODI made of

6

the infringing products.  Informatica must show the share of BODI's sales that it would have made

7

if the infringing products had not been on the market.

8

     You must allocate the lost profits based upon the customer demand for the patented feature

9

of the infringing products or methods.  That is, you must determine which profits derive from the

10

patented invention that BODI sells, and not from other features of the infringing products.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    Case No. C 02-03378 EDL

1

**51.**    **Instruction Before Deliberation - Lost Profits—Factors to Consider**

2    Informatica is entitled to lost profits if it proves all of the following:

3    (1)    that there was a demand for the patented products or methods;

4    (2)    that there were no non-infringing substitutes, or, if there were, the number of the

5    sales made by BODI that Informatica would have made despite the availability of other acceptable

6    non-infringing substitutes.  An alternative may be considered available as a potential substitute

7    even if it was not actually on sale during the infringement period.  Factors suggesting that the

8    alternative was available include whether the material, experience, and know-how for the alleged

9    substitute were readily available.  Factors suggesting that the alternative was not available include

10    whether the material was of such high cost as to render the alternative unavailable and whether

11    BODI had to design or invent around the patented technology to develop an alleged substitute;

12    (3)    that Informatica had the manufacturing and marketing capacity to make any

13    infringing sales actually made by the infringer and for which Informatica seeks an award of lost

14    profits; and

15    (4)    the amount of profit that Informatica would have made if BODI had not infringed.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

52.      **Instruction Before Deliberation - Lost Profits—Collateral Sales**

2          In this case, Informatica is seeking profits from sales of maintenance contracts, which it

3  contends it would have sold along with PowerMart and PowerCenter.  These products are called

4  collateral products.

5          To recover lost profits on sales of such collateral products, Informatica must prove two

6  things.  First, that it is more likely than not that Informatica would have sold the collateral

7  products but for the infringement.  Second, a collateral product and the patented product together

8  must be analogous to components of a single assembly or parts of a complete machine, or they

9  must constitute a functional unit.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1            **53.**      **Instruction Before Deliberation - Reasonable Royalty—Entitlement**

2         If Informatica has not proved its claim for lost profits, or has proved its claim for lost

3 profits for only a portion of the infringing sales, then Informatica should be awarded a reasonable

4 royalty for all infringing sales for which it has not been awarded lost profits damages.

1          **54.      Instruction Before Deliberation -  Reasonable Royalty—Definition**

2          A royalty is a payment made to a patent holder in exchange for rights to make, use or sell

3    the claimed invention.  A reasonable royalty is the payment that would have resulted from a

4    negotiation between a patent holder and the infringer taking place at the time when the infringing

5    sales first began.  In considering the nature of this negotiation, the focus is on what the

6    expectations of the patent holder and infringer would have been had they entered into an

7    agreement at that time and acted reasonably in their negotiations.  However, you must assume that

8    both parties believed the patent was valid and infringed.  In addition, you must assume that patent

9    holder and infringer were willing to enter into an agreement; your role is to determine what that

10   agreement would have been.  The test for damages is what royalty would have resulted from the

11   hypothetical negotiation and not simply what either party would have preferred.

12         In this trial, you have heard evidence of things that happened after the infringing sales first

13   began.  That evidence can be considered only to the extent that it shows how the parties to the

14   hypothetical negotiation would have valued the rights to make, use, and sell the claimed invention

15   as of the time of the first infringement.  You may not limit or increase the royalty based on the

16   actual profits BODI made.

17

18

19

20

21

22

23

24

25

26

27

28

1

**55.** __Instruction Before Deliberation – Date of Commencement - Products__

2      Any damages that Informatica may be awarded by you can commence no earlier than July

3  15, 2002.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**56.** **Concluding Instructions - Duty to Deliberate**

2

When you begin your deliberations, you should elect one member of the jury as your

3

presiding juror.  That person will preside over the deliberations and speak for you here in court.

4

You will then discuss the case with your fellow jurors to reach agreement if you can do so.

5

Your verdict must be unanimous.

6

Each of you must decide the case for yourself, but you should do so only after you have

7

considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

8

your fellow jurors.

9

Do not be afraid to change your opinion if the discussion persuades you that you should.

10

Do not come to a decision simply because other jurors think it is right.

11

It is important that you attempt to reach a unanimous verdict but, of course, only if each of

12

you can do so after having made your own conscientious decision.  Do not change an honest belief

13

about the weight and effect of the evidence simply to reach a verdict.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**57.**   **Concluding Instruction - Use of Notes**

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

1

**58.** **Concluding Instruction - Communication with Court**

2       If it becomes necessary during your deliberations to communicate with me, you may send

3 a note through the courtroom deputy, signed by your presiding juror or by one or more members

4 of the jury.  No member of the jury should ever attempt to communicate with me except by a

5 signed writing; and I will communicate with any member of the jury on anything concerning the

6 case only in writing, or here in open court.  If you send out a question, I will consult with the

7 parties before answering it, which may take some time.  You may continue your deliberations

8 while waiting for the answer to any question.  Remember that you are not to tell anyone -

9 including me - how the jury stands, numerically or otherwise, until after you have reached a

10 unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the

11 court.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

          Case No. C 02-03378 EDL

**59.**   **Concluding Instruction - Return of Verdict**

A verdict form has been prepared for you.  [*Any explanation of the verdict form may be given at this time.*]  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

1

## **61.**   **Concluding Instruction - GLOSSARY**

2     Some of the terms in this glossary will be defined in more detail in the legal instructions

3 you are given.  The definitions in the instructions must be followed and must control your

4 deliberations.

5     Abstract: A brief summary of the technical disclosure in a patent to enable the U.S. Patent

6 and Trademark Office and the public to determine quickly the nature and gist of the technical

7 disclosure in the patent.

8     Acta Technologies: The original name of the defendant in this case, often called just

9 "Acta."  Acta Technologies was acquired and renamed Business Objects Data Integration

10 ("BODI").

11     ActaWorks: ETL product created by Acta Technologies.  BODI renamed ActaWorks to

12 Data Integrator.  Informatica accuses certain versions of the ActaWorks and all versions of Data

13 Integrator of infringement.

14     Amendment: A patent applicant's change to one or more claims or to the specification

15 either in response to an office action taken by a Patent Examiner or independently by the patent

16 applicant during the patent application examination process.

17     Anticipation: A situation in which a claimed invention describes an earlier invention and,

18 therefore, is not considered new and is not entitled to be patented.

19     Assignment: A transfer of patent rights to another called an "assignee" who upon transfer

20 becomes the owner of the rights assigned.

21     ATL: Acta Transformation Language. ATL is a declarative language that the ActaWorks

22 and Data Integrator products use to represent and save what users create in those products.  It is

23 stored in the products' repository.

24     BODI: Business Objects Data Integration, Inc., the defendant in this case.  Formerly, Acta

25 Technologies and owns Data Integrator.

26     Claim: Each claim of a patent is a concise, formal definition of an invention and appears at

27 the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks

28 the boundaries of the patent in the same way that a legal description in a deed specifies the

boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

Client: In an ETL product, most often the program that users interact with to define dataflows; often called the Designer or the GUI.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Data Integrator: Product created and sold by BODI, the defendant in this case, originally called ActaWorks; the product accused of infringement in the case.

Database: An organized collection of data, often as tables.

Dataflow: A description of the intended movement, or flow, of data through an ETL system, from a source to a target.

DBMS: Database Management System; a software program that manages one or more databases.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

EDF: Embedded dataflow; a feature of some versions of ActaWorks and of the Data Integrator products, a type of data flow that can be embedded in one or more other data flows.

Elements: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment: A product or method that contains the claimed invention.

Enablement: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

1    Engine: In an ETL product, the part that determines how the program manages and

2  manipulates data, and executes data flows.

3    ETL: Extract, Transform, and Load; a category of software that extracts data from one or

4  more sources, transforms the data, and loads the transformed data into one or more targets.

5    Examination: Procedure before the U.S. Patent and Trademark Office whereby a Patent

6  Examiner reviews the filed patent application to determine if the claimed invention is patentable.

7    Filing Date: Date a patent application, with all the required sections, has been submitted to

8  the U.S. Patent and Trademark Office.

9    GUI: Graphical User Interface; the part of a program that the user sees and interacts with

10  via a computer monitor, mouse, etc.

11    INFA: Common shorthand for the company called Informatica; plaintiff in this case;

12  comes from Informatica's stock ticker symbol, which is INFA.

13    Informatica Corporation: Plaintiff in this case.

14    Infringement: Violation of a patent occurring when someone makes, uses or sells a

15  patented invention, without permission of the patent holder, within the United States during the

16  term of the patent.  Infringement may be direct or by inducement.  Direct infringement is making,

17  using or selling the patented invention without permission.  Inducing infringement is intentionally

18  causing another to directly infringe a patent.  Inducement of infringement requires an act of direct

19  infringement by another and proof that the defendant knowingly induced infringement with the

20  intent to encourage the infringement.

21    Limitation: A required part of an invention set forth in a patent claim.  A limitation is a

22  requirement of the invention.  The word "limitation" is often used interchangeably with the word

23  "requirement."

24    Nonobviousness: One of the requirements for securing a patent.  To be valid, the subject

25  matter of the invention must not have been obvious to a person of ordinary skill in the field of the

26  invention at the time of the earlier of the filing date of the patent application or the date of

27  invention.

28

1    OEM Agreement: An agreement where one company provides its product to another

2    company for that company to sell with its own product(s) and typically under its brand.

3    Office Action: A written communication from the Patent Examiner to the patent applicant

4    in the course of the application examination process.

5    Patent: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to

6    an inventor to prevent others from making, using or selling an invention for a term of 20 years

7    from the date the patent application was filed (or 17 years from the date the patent issued).  When

8    the patent expires, the right to make, use or sell the invention is dedicated to the public.  The

9    patent has three parts, which are a specification, drawings and claims.  The patent is granted after

10   examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor

11   which has these parts, and this examination is called the prosecution history.

12   Patent and Trademark Office (PTO): An administrative branch of the U.S. Department of

13   Commerce that is charged with overseeing and implementing the federal laws of patents and

14   trademarks.  It is responsible for examining all patent applications and issuing all patents in the

15   United States.

16   PowerMart: Product created and sold by Informatica, the plaintiff in this case.

17   Prior Art: Previously known subject matter in the field of a claimed invention for which a

18   patent is being sought.  It includes issued patents, publications, and knowledge deemed to be

19   publicly available such as trade skills, trade practices and the like.

20   Prosecution History: The prosecution history is the complete written record of the

21   proceedings in the PTO from the initial application to the issued patent.  The prosecution history

22   includes the office actions taken by the PTO and the amendments to the patent application filed by

23   the applicant during the examination process.

24   RDBMS: Relational Database Management System; a type of DBMS that follows certain

25   rules about how data is stored.

26   Reads On: A patent claim "reads on" a device or method when each required part

27   (requirement) of the claim is found in the device or method.

28   Reduction to Practice: The invention is "reduced to practice" when it is sufficiently

1   developed to show that it would work for its intended purpose.

2       Repository: A special type of database that stores metadata for an ETL product.

3       Requirement: A required part or step of an invention set forth in a patent claim.  The word

4   "requirement" is often used interchangeably with the word "limitation."

5       Royalty: A royalty is a payment made to the owner of a patent by a non-owner in exchange

6   for rights to make, use or sell the claimed invention.

7       Server: In an ETL application, the computer or software which runs an ETL dataflow,

8   often called with Engine, or Server Engine.

9       Source: A database, file, and/or table from which data is taken or moved.

10      Source Code: Computer programming that is in a form that programmers can read and

11  work with.

12      Specification: The specification is a required part of a patent application and an issued

13  patent.  It is a written description of the invention and of the manner and process of making and

14  using the claimed invention.

15      SQL: Structured Query Language; a computer language used to interact with a DBMS.

16      Table: An organized collection of data.

17      Target: The database, file, and/or table to which data is to be written.

18      TDL: Transformation Definition Language; a declarative language described in the '670

19  and '775 patents.

20

21

22

23

24

25

26

27

28