UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFORMATICA CORPORATION<br><br>  Plaintiff,<br><br>  v.<br><br>BUSINESS OBJECTS DATA INTEGRATION, INC.<br><br>  Defendant.<br>_____/ | No. C 02-03378 EDL<br><br>**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL UNLESS PLAINTIFF ACCEPTS REMITTITUR** |

Jury trial in this patent infringement case commenced on March 12, 2007 and concluded with a verdict in favor of Plaintiff in the amount of $25,240,000 on April 2, 2007. After post-trial motions for attorney's fees and for a permanent injunction, a bench trial on inequitable conduct, and further briefing on the impact of Microsoft v. AT&T, 127 S. Ct. 1746 (2007), judgment was entered on May 16, 2007. On May 31, 2007, Defendant filed a motion for new trial and renewed motion for judgment as a matter of law, arguing that the jury's verdict was excessive and urging the Court to grant a new trial on damages. The Court held a hearing on July 11, 2007, and supplemental briefs were filed on July 20, 2007. Having carefully considered the papers submitted and the arguments at the hearing, the Court hereby denies Defendant's renewed motion for judgment as a matter of law and grants Defendant's motion for new trial unless Plaintiff accepts the Court's order of remittitur.

//

**Defendant's Renewed Motion for Judgment as a Matter of Law**

In reviewing Defendant's motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in its favor. See Josephs v. Pacific Bell, 443 F.3d 1050, 1062 (9th Cir. 2006); see also Bell v. Clackamus County, 341 F.3d 858, 865 (9th Cir. 2003) (citing Fed. R. Civ. P. 50(a)). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Josephs, 443 F.3d at 1062. Here, although reasonable minds could differ, viewing the evidence as required, the Court cannot conclude that the evidence only supports a verdict in Defendant's favor.

Specifically, viewed in the light most favorable to Plaintiff, the evidence at trial showed that Defendant included the infringing EDF capability in its Data Integrator product as a valuable feature necessary to compete against Plaintiff and others in the marketplace and promoted this feature to customers. For example, Defendant's key customers and OEM distributor told Defendant that the feature was "needed." See, e.g., Trial Tr. 362:7-364:3; Trial Ex. 489. Defendant's chief technology officer gave the EDF feature an A+ importance rating. See Trial Ex. 495. In subsequent versions of its product, Defendant enhanced its EDF feature to better provide object reusability desired by its customers. See, e.g. Trial Ex. 489; Trial Tr. 1613:23-1615:7. Defendant also highlighted the EDF feature and its benefits in some of its marketing of the Data Integrator product. See, e.g., Trial Tr. 443:6-444:4; 1613:23-1615:7; Trial Ex. 279. Plaintiff's expert testified that the EDF feature was important for customers purchasing the Data Integrator. See Trial Tr. 850:6-851:20. Defendant emphasized the EDF feature in competing with other products. See, e.g., Trial Tr. 1215:18-1220:12. Defendant also instructed its customers on using and creating the infringing EDF feature. See, e.g., Trial Ex. 270. Defendant offered training to its customers on creating ETL jobs using EDFs. See, e.g., 1610:12-1611:21; Trial Ex. 476. In addition, Defendant co-sponsored a comprehensive customer survey conducted by leading industry analysts that found that the best ETL tools had "content-independent reusable objects" or EDFs. See Trial Ex. 325; Trial Tr. 1226:16-1228:23; 1616:11-12. Because the survey shaped customer demand, Defendant took it seriously. See Trial

Tr. 1618:25-1619:10.  Moreover, Mr. McGoveran testified regarding direct infringement by two of Defendant's customers.  See Trial Tr. 641:1-647:25.

Accordingly, Defendant's motion for renewed judgment as a matter of law is denied.

**Defendants' Motion for New Trial**

In anticipation of the then-forthcoming decision in Microsoft v. AT&T, 127 S. Ct. 1746 (2007),[1] in which certiorari had been granted but no decision yet issued, the verdict form in this case asked not only the total amount of damages but also the breakdown between domestic and foreign damages.  Specifically,  question 10 stated:

> **DAMAGES ATTRIBUTABLE TO INFRINGEMENT UNDER 35 U.S.C. § 271(f)**
>
> If you awarded damages in response to Question No. 9, what amount of damages indicated above do you attribute to BODI's act of supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe any of claims 1, 8, 12, 15, or 18 of the '670 patent or claims 5, 7, or 11 of the '775 patent if such combination had occurred within the United States?

In response to Question 10, the jury allocated $2,524,000, or 10%, of total damages to infringement under 35 U.S.C. § 271(f).  In seeking a new trial on damages, Defendant argues that the jury's verdict was excessive, and that the ten percent allocation to § 271(f) damages was not supported by the evidence.

A jury's finding on the amount of damages should be reversed only if the amount is "grossly excessive or monstrous," Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir.

---

[1] In Microsoft v. AT&T, 127 S. Ct. 1746 (2007), the Supreme Court held that software, uncoupled from a medium, did not constitute a component supplied from the U.S. for combination with the patented invention, a speech-processing computer, under Section 271(f). Microsoft, 127 S.Ct. at 1755.  Specifically, the Supreme Court found that the master disk or electronic transmission that Microsoft sent from the United States was never installed on any of the foreign-made computers in question, but rather that copies made abroad were used for installation.  Id. at 1751.  The Supreme Court held that "[b]ecause Microsoft does not export from the United States the copies actually installed, it does not 'supply from the United States' 'components' of the relevant computers, and therefore is not liable under § 271(f) as currently written." Id.

2003) (internal quotations marked omitted), or if the amount is "clearly unsupported by the evidence" or "shocking to the conscience." Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir. 1988) (internal quotation marks omitted). The focus is on whether, "after giving full respect to the jury's findings, the judge 'is left with the definite and firm conviction that a mistake has been committed by the jury.'" Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987). Moreover, a partial new trial is appropriate where "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Prods. Co. v. Champlain Refining Co., 283 U.S. 494, 500 (1931); see also 12 Moore's Federal Practice, § 59.14[1] at 59-91 to 59-92 (where the court is satisfied that liability has been properly determined, the new trial may be granted as to damages or "may be limited to a single element of damages, if that element is distinct and separable from questions related to other elements of damages.").

The jury's overall verdict of $25,240,000 was not grossly excessive or shocking to the conscience; the Court is not convinced that a mistake was made in reaching this amount. Although reasonable minds could differ, the record contains evidence to support the total verdict. Specifically, Plaintiff's damages expert, Dr. O'Brien, testified to a $25,000 royalty for each copy of Data Integrator that Defendant sold. See Trial Tr. 982:9-20; 986:1-990:3. He opined that, based on all of the evidence, his use of a $25,000 per license royalty rate was conservative. Trial Tr. 989:24-990:3; 1000:12-23. Dr. O'Brien also testified that a reasonable royalty on Defendant's maintenance contracts was fifteen percent, assuming a ninety percent renewal rate. See Trial Tr. 983:2-8; 1009:18-1011:10. In applying these royalty rates and using a conservative number of licenses sold, Dr. O'Brien testified that Plaintiff was entitled to a total of $42.87 in reasonable royalties. See Trial Tr. 1009:1-11; 1012:4-11. The jury's verdict was well within Dr. O'Brien's calculation.

However, the jury's allocation of ten percent of the total damages award to § 271(f) damages was unsupported by the evidence. Dr. O'Brien opined that a reasonable royalty should be based on a flat fee per license plus maintenance royalties and that about $28.14 million out of total reasonable royalties of $42.87 million, or 66%, resulted from foreign sales. Trial Tr. at 1011:24-1012:12. Defendant's expert, Mr. Meyer, calculated damages instead based on a royalty of one percent of domestic and foreign sales, with foreign sales of approximately $84 million out of $161 million, or about 52% of total sales. Trial Tr. at 1732:11-1733:16. There was no evidence whatsoever, nor could any reasonable inference be drawn, supporting an allocation of only ten percent of damages to foreign sales. Further, the parties did not introduce any evidence or make any argument that Defendant's efforts to induce use of infringing EDFs or the actual extent of their use are different in the United States than they are abroad. Accordingly, because the amount allocated to domestic damages is unsupported by any evidence, the Court is left with a firm conviction that the jury made a mistake in calculating the allocation, which warrants a new trial.

The question of the scope of a new trial on damages was briefed by the parties after the July 11, 2007 hearing on Defendant's motion for new trial. In arguing for a partial new trial on the allocation issue only, Plaintiff argues that the issue is separate and distinct. See, e.g., Rice v. Community Health Ass'n, 203 F.3d 283, 285 (4th Cir. 2000) (where jury awarded breach of contract damages and future consequential damages, the court ordered a new trial only as to the consequential damages, stating that the two forms of damages required distinct elements of proof and focused on different time frames, and also that a new trial on all damages would endanger the breach of contract damages, which the defendant had forfeited its right to challenge because the defendant failed to preserve its objection to a jury instruction on front pay); Strickland v. Owens Corning, 142 F.3d 353, 359 (6th Cir. 1998) (where jury's apportionment of fault to defendant was not supported by evidence, a partial new trial on allocation was ordered). Here, however, because

the parties' experts calculated the damages in two distinct ways (a flat fee multiplied by the number of licenses plus a maintenance royalty versus a percentage of a dollar sales base), the Court cannot ascertain from the jury's verdict the basis for the jury's aggregate award.  Accordingly, it would not be possible to instruct the jury on which approach to use to determine the percentage attributable to foreign damages.  Therefore, it is appropriate to conduct a new trial on the entire damages award. See, e.g., Jamison Co, Inc. v. Westvaco Corp., 526 F.2d 922, 934-36 (5th Cir. 1976) (denying a partial new trial because the basis for the jury's verdict was unknowable because of the general verdict); Computer Access Tech. Corp. v. Catalyst Enters., Inc., 273 F. Supp. 2d 1063, 1076-78 (N.D. Cal. 2003) (ordering a new trial as to all claims because there was insufficient evidence to support the jury's finding of the amount of damages for trademark infringement).

Having concluded that the domestic portion of the damage award is disproportionate in light of the evidence even when viewed in the light most favorable to the prevailing party, the Court must grant a new trial on damages unless Plaintiff accepts a remittitur which the Court considers justified. See Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir.1983) ("The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.").   The proper amount of a remittitur is the maximum amount sustainable by the evidence.  See D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir.1982).

Because the Court concludes that the aggregate jury award of $25,240,000 is not grossly excessive, the remittitur in this case should be calculated by reducing the overall award by an amount attributable to foreign sales that represents the maximum amount sustainable by the evidence.  Plaintiff argues that a fair remittitur is the amount of domestic sales, which its expert put at $14.7 million, plus nearly all of the remaining $10.5 million of the $25.2 million total award, which Plaintiff contends it is entitled to under Microsoft.  However, the evidence does not support

Plaintiff's proposed remittitur. The jury refused to award the total amount of damages advocated by Plaintiff's expert, instead imposing a substantial discount. As the jury had no basis for differentiating the discount between foreign and domestic damages, it must have found the amount of domestic damages prepared by Plaintiff's expert to be excessive. Further, without evidence at trial of the amount of foreign sales attributable to each of the four different methods by which Defendant provided Data Integrator to foreign customers, some of which are actionable under § 271(f) and some of which no longer are after <u>Microsoft</u>, the Court cannot reach a reasoned decision on any amount of foreign sales for remittitur. Plaintiff's calculation would require the Court to simply accept Plaintiff's supposition about the amount of Defendant's foreign sales that are actionable under § 271(f) after <u>Microsoft</u> without any proof.

Defendant argues for a much smaller remittitur based on new calculations differentiating between different types of license in a way unsupported by the evidence at trial, blended with its expert's lower calculation that the jury rejected in awarding more than he advocated. This proposed calculation also requires assumptions by the Court that are not warranted by the evidence and are less than the maximum amount sustainable by the evidence. Alternatively, in a footnote in their supplemental brief, Defendant urges the Court to reduce the damages by 66%, the percentage that results from adopting Plaintiff's expert's method of calculating damages. This approach also fails because it does not reflect the maximum amount sustainable by the evidence.

The record, however, does contain evidence from the parties' experts supporting division of damages into foreign and domestic. Dr. O'Brien testified that foreign sales constituted 66% of total sales, leaving 34% as domestic, while Mr. Meyer testified that foreign sales constituted 52%, leaving 48% allocated to domestic. The Court adopts the higher percentage because it is sustainable by the evidence. For purposes of remittitur, then, the maximum amount sustainable by the evidence is $12,115,200, or 48% of the total. Accordingly, the Court grants Defendant's motion for a new

trial on the issue of damages under 35 U.S.C. § 271(f) unless Plaintiff accepts a remittitur in the amount of $12,115,200.

At the hearing on July 11, 2007, when the Court announced its intention to calculate a remittitur, Plaintiff asked the Court to assign an enhancement amount as discussed in the Court's May 16, 2007 Order.  The Court declines to determine the specific enhancement at this time.  The Court will determine the amount of the enhancement either upon acceptance of the remittitur or upon the results of a new trial.  See May 16, 2007 Order at 10:16-18 ("In light of the jury's finding of willfulness and examination of the Read factors, the Court concludes that a modest enhancement of damages is appropriate, though not a substantial enhancement.").  In addition, because a new trial is not a certainty at this time, the Court need not reach the question of whether discovery will be reopened.

Accordingly, Defendant's Motion for New Trial is granted unless Plaintiff accepts the Court's order of remittitur.  No later than September 10, 2007, Plaintiff shall file and serve a statement regarding whether it accepts the remittitur or opts for a new trial.  If Plaintiff chooses a new trial, the Court will schedule a case management conference.

**IT IS SO ORDERED.**

Dated: August 16, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

8